UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

---

In re

CHRISTINA UHLIG and
BERNARD UHLIG,

              Debtors.

Case No. 13-25360

Chapter 13

---

MEMORANDUM DECISION ON TRUSTEE'S OBJECTION TO CONFIRMATION

---

This matter came before the Court on the trustee's objection to confirmation of the debtors' amended plan on the grounds that it did not provide for payment of all projected disposable income. The trustee and debtors submitted briefs in support of their respective positions. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L), and the Court has jurisdiction under 28 U.S.C. § 1334. This decision constitutes the Court's findings of facts and conclusions of law pursuant to Fed. R. Bankr. P. 7052. For the reasons stated below, the objection to confirmation is overruled.

BACKGROUND

The above-median income debtors filed this chapter 13 case on April 23, 2013, along with a proposed plan, which was subsequently amended on June 19, 2013. The debtors' original plan proposed payment to unsecured creditors of up to $15,590.43, and a proposed modification additionally provided that "[a]ny net appreciation in the value of the Debtors' whole life insurance policy(ies) that is in excess of the Debtors' ability to claim an exemption in such net appreciation shall be paid into the Plan and distributed to unsecured creditors." (Notice and Request to Modify Chapter 13 Plan, Attachment to Special Provisions, filed June 19, 2013).

Although the debtors deducted from their disposable income $84.00 per month on Line 32 of Form B22C for term life insurance premiums, they did not take any deduction for whole life insurance premiums. The trustee opposed confirmation of the amended plan on various grounds, some of which were subsequently resolved. The sole issue remaining before the Court is whether the cash surrender *value increase* of a whole life policy over the life of the plan should be considered disposable income to be paid as an additional dividend to creditors with unsecured claims.

## ARGUMENTS

*Trustee's Argument.*

The means test (Line 32) provides a deduction from disposable net income only for term life insurance premiums, not whole life insurance premiums, when calculating other necessary expenses. Unlike term policies, whole life insurance policies have a significant savings component. *See generally In re Narvais*, No. 11-20583, 2011 WL 5027503, 2011 Bankr. LEXIS 4104 (Bankr. D. Wyo. Oct. 21, 2011)(holding whole life policy savings vehicle was not necessary for basic living expenses); *In re Williamson*, 296 B.R. 760, 765-66 (Bankr. N.D. Ill. 2003) (finding non-debtor spouse's whole life policy was investment vehicle and premiums should be included in debtor's disposable income); *In re DeRosear*, 265 B.R. 196, 211 (Bankr. S.D. Iowa 2001) (noting "whole life insurance policies amount to savings vehicles and expenditures for such policies typically should be disallowed").

Section 1322(a)(1) states a plan shall "provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan." The trustee considers this increase in value to be

2

future income that should be submitted to the plan. Additionally, the plan must provide for all "projected disposable income," a defined term, received during the applicable commitment period. 11 U.S.C. § 1325(b)(1).

*Debtors' Argument*.

The debtors argue they are applying all of their projected disposable income to the plan. Additionally, an increase in the cash surrender value of a whole life insurance policy does not constitute "projected disposable income." At least some part of the increase in cash surrender value of a whole life policy would be derived from postpetition premium payments, but it would be nonsensical to construe section 1325(b)(1)(B) in a way that would require debtors to submit all of their disposable income as determined by section 1325(b)(2), *plus* any funds they are able to save or otherwise set aside during the term of the plan by readjusting their budget.

The Bankruptcy Code does not prohibit debtors from saving money during their plan or paying for a type of insurance for which the "disposable income" equation provides no deduction from income, as long as the debtors' plan proposes to pay no less than their "disposable income" as determined by section 1325(b)(2). *See Hamilton v. Lanning*, 560 U.S. 505, 130 S.Ct. 2464, 2475 (2010) (holding disposable income is calculated pursuant to section 1325(b)(2), absent unusual circumstances). Other courts have found that disposable income does not include prepetition property or its proceeds because chapter 13 allows a debtor to retain prepetition assets, which are subjected to the best interest test, not the disposable income test. *See In re Euler*, 251 B.R. 740, 748 (Bankr. M.D. Fla. 2000) (holding proceeds from sale of debtors' appreciated property did not constitute disposable income).

DISCUSSION

The debtors in this case are above-median income for their family size in Wisconsin, and the debtors' Form B22C acknowledges that their projected disposable income is to be determined under section 1325(b)(3), applicable to calculating this amount for above-median income debtors.  Section 1325(b)(1) requires that when there is an objection by an unsecured claimant or by the trustee, as has occurred here, an above-median debtor's plan cannot be confirmed unless all the debtor's "projected disposable income," determined in accordance with section 707(b)(2), is paid to unsecured creditors.  11 U.S.C. § 1325(b)(1)-(3).  There are no "special circumstances" in this case, as that term is used in section 707(b)(2).  These debtors' original plan proposes payment to unsecured creditors of up to $15,590.43, and a proposed modification additionally provided that "[a]ny net appreciation in the value of the Debtors' whole life insurance policy(ies) that is in excess of the Debtors' ability to claim an exemption in such net appreciation shall be paid into the Plan and distributed to unsecured creditors."  This was apparently an attempt to satisfy the trustee's concerns, which it did not.  Therefore, the question is, is $15,590.43, plus the nonexempt appreciation proposed by the debtor, enough to pay unsecured creditors the amount required by section 1325(b)(1)(B)?

Courts have not addressed the *exact* issue in this case:  Whether for an above-median income debtor the cash surrender *value increase* of a whole life policy over the life of the plan should be considered disposable income to be paid as an additional dividend to creditors with unsecured claims.  Many cases dealing with whole life insurance predate BAPCPA and are decided in the context of whether the expense for whole life insurance premiums are reasonable and necessary under the debtor's unique circumstances.  Some post-BAPCPA cases are also decided in the discretionary context of the "totality of the circumstances" test of section

707(b)(3). The reasonableness of the expense, or its deductibility for the means test, is not the issue in this case. It is whether the increase in value postpetition must be paid to unsecured creditors. The modification proposed by the debtor apparently does not, in the trustee's opinion, provide adequately for unsecured creditors.

Following the so-called "forward-looking" approach and rejecting the "mechanical" approach, the Supreme Court ruled in *Hamilton v. Lanning*, 560 U.S. 505, 130 S.Ct. 2464 (2010), that in calculating an above-median chapter 13 debtor's "projected disposable income," the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation. A "*Lanning* adjustment" usually arises when a debtor has lost a job or had to take a lesser paying job, and the condition can be expected to be longstanding. In this case, however, the trustee argues that the increase in whole life cash value will occur and should be added to disposable income, so the debtors should be able to pay more over the term of the plan. He acknowledges this extra income might not be exactly quantified, because some increase in a policy's cash value is due to passive appreciation, such as increase in value and trading of the insurance company's investments, plus dividends and interest on those assets. Thus, the increase would not be solely attributable to premiums paid, but it could be estimated from past performance.

A few bankruptcy courts have encountered the question of whole life policies owned by debtors. The bankruptcy court in *In re Schott*, No. 05-49765-293, 2007 WL 914043 (Bankr. E.D. Mo. March 23, 2007), a pre-BAPCPA-filed case, granted the US Trustee's motion to dismiss under section 707(b) because the debtors had sufficient disposable income to fund a chapter 13 plan. In particular, the court determined:

5

> The Court also finds that a significant portion of the $650.00 per month in life insurance premiums is also not a reasonably necessary expense. There is no blanket rule as to whether life insurance premiums are a reasonably necessary expense under § 1325(b)(2). *Smith v. Spurgeon (In re Smith)*, 207 B.R. 888, 890 (B.A.P. 9th Cir. 1996). Rather, the court should examine the particular type of life insurance policy in question along with the debtor's need to replace her income to protect her dependents financially if she dies. *Id*.
>
> Under this standard, the premium on a term life insurance policy that reasonably provides for the debtor's dependents by replacing debtor's income in case of debtor's death is a reasonably necessary expense. However, the portion of the premium applied to increase the cash value of a whole life policy is simply a savings device and is not a reasonably necessary expense. *In re Leung*, 311 B.R. 626, 631 (Bankr. S.D. Fla. 2004); *In re DeRosear*, 265 B.R. 196, 211 (Bankr. S.D. Iowa 2001); *In re Heffernan*, 242 B.R. 812, 817 (Bankr . D. Conn.1999).

*Id.* at *3-4. The court went on to state that adequate term insurance would be appropriate.

Regarding the means test and whole life insurance, one treatise stated the following:

> Under the means test provisions of Code § 707(b)(2)(A)(ii)(I) that govern determination of an above-median Chapter 13 debtor's disposable income under Code § 1325(b)(3), a debtor may deduct actual monthly expenses for items in categories specified as "Other Necessary Expenses" by the Internal Revenue Service (IRS) in its Financial Analysis Handbook, which is part of the Internal Revenue Manual (the IRS Manual).
>
> One of the "Other Necessary Expenses" is for life insurance, provided that it is a term policy on the life of the taxpayer only and is not used as an investment or savings vehicle. The principle is thus consistent with rulings prior to enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) that permitted deductions for premiums on a life insurance policy, whether term or whole life, only if the policy did not build cash value and accrue savings. In accordance with these principles, courts have denied deductions for premiums on whole life policies on the debtor's life. ... A deduction may be permitted with regard to a whole life policy, however, to the extent that it does not increase its cash value.

Chapter 13 Practice and Procedure § 9F:45 *Life Insurance* (Thomas Reuters, updated Nov. 2013) (citing *In re Schott*, No. 05-49765-293, 2007 WL 914043 (Bankr. E.D. Mo. March 23, 2007); *In re Narvais*, No. 11-20583, 2011 WL 5027503 (Bankr. D. Wyo. Oct. 21, 2011); *In re Lipford*, 397 B.R. 320 (Bankr. M.D. N.C. 2008)). These debtors have not tried to adjust their means test result

by the amount of the whole life premiums.

At least one court allowed the costs of a whole life policy, applying a reasonableness test. *In re MacNamara*, No. 1:08-bk-3895MDF, 2009 WL 1606985 (Bankr. M.D. Pa. June 5, 2009) (disallowing as unreasonable chapter 7 debtors' term life policies and allowing as reasonable a whole life policy for one debtor, based on an extended care benefit and no cash value). In the context of a "totality of the circumstances" test or a "reasonableness" test, such considerations are appropriate. However, the case before us does not require the application of reason, only statutory interpretation.

Section 1325(b) incorporates section 707(b), which in turn incorporates the National and Local Standards promulgated by the Internal Revenue Service and "Other Necessary Expenses." Above-median income debtors are entitled to treat the "applicable monthly expense amounts" specified in the standards as fixed allowances and are entitled to deduct the amounts specified, regardless of whether their actual housing, transportation or other such expenses are greater or less than the standards. The local and national standards are set amounts determined to be reasonable, absent special circumstances, and individual variation – however objectively reasonable or unreasonable – is ignored. If one debtor practices "extreme couponing" and feeds the family on $18 per week, and another succumbs to a passion for fresh lobster, all other factors being equal, they will have the same projected disposable income under sections 707(b)(2) and 1325(b)(3). Courts have consistently held that above-median income chapter 13 debtors are entitled to take the standard deductions, notwithstanding their actual expenses. *See, e.g., In re Scott*, 457 B.R. 740 (Bankr. S.D. Ill. 2011) (because debtors had vehicle ownership expenses in form of car loans, the standardized vehicle ownership deductions were "applicable" and could be

7

claimed in full, despite fact that debtors' actual vehicle loan expenses were less); *In re Melancon*, 400 B.R. 521 (Bankr. M.D. La. 2009) (debtors entitled to claim national standard health care expenses whether or not their documented prepetition health care expenses are lower than national standard; debtors may also deduct as "other necessary expenses" additional actual documented health care expenses); *In re Egbert*, 384 B.R. 818 (Bankr. E.D. Ark. 2008) (debtors entitled to take standard housing and vehicle ownership deductions though actual monthly mortgage payment, of $343.75, and their average monthly payments on vehicles, in amounts of $122 and $56, were all less than deductions allowed under IRS standards). Presumably, such debtors can spend – or not – that extra income on whatever they please, but they need to commit to the plan only what the law requires and no more. They can spend it, save it, or invest it in a whole life insurance policy, but their "projected disposable income," as determined by section 1325(b)(1)(B), does not change because of that decision, and the plan meets the requirements for confirmation.

Therefore, as a general rule, debtors need not commit any more funds to payment of unsecured creditors than those required by the "projected disposable income" test, in order for their plan to meet the requirements for confirmation. If debtors are able to reduce certain general monthly expenses, such as utilities, food, or clothing, to name a few, the bankruptcy system should encourage the retention – not the consumption – of those savings. Of course, there may be times when debtors commit so little income to repaying creditors, relative to their true ability to pay, that their plans show an intent to manipulate the Code and to not make a good faith efforts at repayment. This, however, is not one of those cases.

For the reasons stated above, the trustee's objection to confirmation is overruled. A

8

separate order consistent with this decision will be entered.

January 30, 2014

Margaret Dee McGarity
United States Bankruptcy Judge